

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-2007

# Sarnowski v. Air Brooke Limousine

Precedential or Non-Precedential: Precedential

Docket No. 06-2144

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Sarnowski v. Air Brooke Limousine" (2007). *2007 Decisions*. Paper 10.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/10

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-2144

———————

JAMES SARNOWSKI,

Appellant

v.

AIR BROOKE LIMOUSINE, INC.

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 03-cv-04930)
District Judge: Dennis M. Cavanaugh

———————

Argued on March 26, 2007

Before: FISHER, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed December 12, 2007)

Andrew M. Moskowitz, Esquire (ARGUED)
Neil H. Deutsch, Esquire
Deutsch, Atkins, P. C.
25 Main Street, Suite 104
Court Plaza North
Hackensack, NJ 07601

        Counsel for Appellant


Kevin Kovacs, Esquire (ARGUED)
10 East Cliff Street
P. O. Box 875
Somerville, NJ 08876

        Counsel for Appellee


Lynn S. McIntosh, Esquire (ARGUED)
Office of the Solicitor
United States Department of Labor
Room N-2716
200 Constitution Avenue, N. W.
Washington, DC 20210

        Counsel Amicus-Appellant

_____

O P I N I O N

_____

**ROTH,** <u>Circuit Judge</u>:

James Sarnowski was terminated by his employer, Air Brook Limousine, Inc. Sarnowski claims that his termination violated the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601, *et seq.*; the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1, *et seq.*; and the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1, *et seq.* The District Court granted summary judgment in favor of Air Brook on all three claims. For the reasons set forth below, we will affirm the judgment of the District Court on the CEPA claim but vacate the judgments on the claims under the FMLA and the LAD.

## I. **Background**

In July 2001, Air Brook, a company that provides limousine, van, and charter bus services, hired Sarnowski as a service manager with responsibilities that included the maintenance of Air Brook's vehicles. Sarnowski's initial performance evaluations were very good. In June 2002, he received a favorable review and a salary increase.

Sarnowski suffers from Coronary Artery Disease and Wolff-Parkinson-White syndrome (an abnormal electrical communication in the heart which causes episodes of rapid heart rate), with which he was diagnosed after suffering a heart attack in 1992. In October 2002, Sarnowski underwent quintuple coronary artery bypass surgery after a coronary angiogram revealed several blockages. He was hospitalized for about one

3

week and remained out of work for approximately a month and a half.

In December 2002, Sarnowski received a written warning regarding performance issues. He was told that, although his performance had been excellent at first, it had reached unacceptable levels in the weeks leading up to and following his hospitalization and leave. Sarnowski was urged to improve his performance and to speak with his supervisors regarding any problems he might be having.

The following spring, Sarnowski began experiencing heart palpitations. On April 7, 2003, a coronary angiogram revealed four more blocked arteries. Sarnowski's doctors advised him that he would need to wear a heart monitor for thirty days and that, depending on the results, he might need further heart surgery. Sarnowski maintains that he then advised his immediate supervisor that his doctors had found four more blockages, that he was going to have to undergo medical monitoring, and that he might need to take an additional six weeks off for further heart surgery. Ultimately, the heart monitor did reveal that Sarnowski would need further surgery.

Sarnowski was terminated on April 15, 2003 – after he claims that he had informed his supervisor of the monitor and of the possible need for further surgery, but before he had learned that the need for surgery was definite. Air Brook maintains that Sarnowski was terminated for performance-related reasons.

On October 17, 2003, Sarnowski filed a complaint in the United States District Court for the District of New Jersey,

claiming that Air Brook had violated the FMLA,[1] the LAD and the CEPA. On December 20, 2005, the District Court granted summary judgment to Air Brook on all of Sarnowski's claims. Sarnowski appealed.

## II. **Jurisdiction and Standard of Review**

The District Court had subject matter jurisdiction over Sarnowski's claim under the FMLA pursuant to 28 U.S.C. § 1331 and subject matter jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. We exercise jurisdiction over this appeal of a final order granting summary judgment pursuant to 28 U.S.C. § 1291.

Our review of the District Court's grant of summary judgment is plenary. We apply the same test as a district court applies initially. *Anderson v. Consol. Rail Corp.* 297 F.3d 242, 246 (3d Cir. 2002). Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the

record is construed in the light most favorable to the

---

[1] Initially, Sarnowski filed two claims under the FMLA. He later withdrew, with prejudice, his claim for failure to reinstate. Only one claim under the FMLA continues in dispute.

non-moving party.  *Anderson*, 297 F.3d at 247.

## III.  Discussion

### A.  Interference with Rights under the FMLA

The FMLA grants eligible employees the right to take up to twelve workweeks of leave in any twelve-month period if a "serious health condition . . . makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  The FMLA also provides that it shall be unlawful for an employer to interfere with, restrain, or deny an employee's exercise of or attempt to exercise that right.  29 U.S.C. § 2615(a)(1).  In order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits.  *See Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).  Sarnowski claims that Air Brook interfered with his rights under the FMLA by terminating him after learning that he would need medical monitoring and might need another six weeks off for additional heart surgery.  The District Court granted summary judgment against Sarnowski on his FMLA interference claim on the ground that Sarnowski was not entitled to benefits under the FMLA because he did not submit a formal request for leave under Air Brook's FMLA policy.  *Sarnowski v. Air Brook Limousine, Inc.*, No. 03-4930, 2005 WL 3479685, at *2 (D.N.J. Dec. 20, 2005).

As a general matter, the District Court was correct that,

6

for Sarnowski to have been entitled to benefits under § 2612(a)(1)(D) for his 2003 heart problems, he must have provided notice to Air Brook of his need for leave. An employee seeking leave under § 2612(a)(1)(D) "shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B). Sarnowski does not dispute that he was required to provide Air Brook with notice. Rather, the dispute in this appeal is whether the notice Sarnowski did provide was legally sufficient to entitle him to benefits under the FMLA.

The regulations provide some guidance as to what sort of notice is sufficient. It is clear that an employee need not give his employer a formal written request for anticipated leave. Simple verbal notification is sufficient:

> An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA . . ..

29 C.F.R. § 825.302(c). *See also Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995). The issue is whether the employee has "state[d] a qualifying reason for the needed leave." 29 C.F.R. § 825.208(a)(2). Moreover, the regulations are clear that employees may provide FMLA qualifying notice

7

before knowing the exact dates or duration of the leave they will take. For instance, an employee must "make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer . . .." 29 U.S.C. § 2612(e)(2)(A). Thus, an employee who needs medical treatment may inform his employer of his need for leave *before* scheduling the treatment so as to reasonably accommodate the needs of the employer. Additionally, the 30-day statutory notice requirement is designed to be flexible, and an employee is not required to give greater notice than is "practicable". 29 U.S.C. § 2612(e)(2)(B).

Other courts have interpreted this notice requirement with the liberal construction that is suggested by the text. The Sixth Circuit Court of Appeals has held that "[t]he right to actually take twelve weeks of leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future." *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001). To determine when an employee's intention to take leave has been sufficiently conveyed to his employer so as to constitute requisite notice under the FMLA, the court found it useful to employ the following test:

> [T]he critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job.

8

*Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004), *cert. denied*, 543 U.S. 1146 (2005). This test is nearly identical to one adopted by the Fifth Circuit Court of Appeals:

> The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.

*Manuel*, 66 F.3d at 764.

In providing notice, the employee need not use any magic words. The critical question is how the information conveyed to the employer is reasonably interpreted. An employee who does not cite to the FMLA or provide the exact dates or duration of the leave requested nonetheless may have provided his employer with reasonably adequate information under the circumstances to understand that the employee seeks leave under the FMLA. The Eighth Circuit Court of Appeals implicitly adopted this position when it stated that "[i]n order to benefit from the protections of the statute, an employee must provide his employer with enough information to show that he *may* need FMLA leave." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (emphasis added). This approach to the notice requirement is a sensible one. It benefits employers if employees are encouraged to apprise their supervisors of an anticipated need for leave. Such openness maximizes' employers' ability to plan their staffing needs.

Indeed, where courts have found notice to be deficient, it has been because the employee failed to convey the reason for needing leave. *See, e.g.*, *Seaman v. CSPH, Inc.*, 179 F.3d 297, 302 (5th Cir. 1999) (finding inadequate notice where employee never informed his supervisor of a serious medical condition); *Brenneman*, 366 F.3d at 423-24 (finding inadequate notice where employee did not explain that his absence had been due to a serious medical condition until after the fact); *Woods*, 409 F.3d at 992-93 (finding inadequate notice where employee expressed that he was stressed and felt his health was at risk but never provided any information to indicate that his absence from work was due to a serious health condition).

We have concluded that, when the facts are viewed in the light most favorable to Sarnowski, Air Brook had sufficient notice of Sarnowski's intent to take leave to bar Air Brook from interfering with Sarnowski's rights under the FMLA. Sarnowski, a man with chronic heart problems, had missed approximately six weeks of work for quintuple coronary artery bypass surgery. He informed his supervisor of his need for monitoring and possible additional surgery. He was not certain that he would need surgery, but he conveyed what information he had and made it clear to his employer that his health problems were continuing. Eight days later, Sarnowski was terminated. We conclude that, based on the factual record as related by Sarnowski, Air Brook had sufficient notice of Sarnowski's need for leave to satisfy the notice requirements of the FMLA.

In so holding, we make no presumptions about whether Sarnowski's termination did in fact constitute prohibited

10

interference.  First, the parties dispute the precise content of the notice given.  It will be for the trier of fact to resolve that dispute.  Second, the FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA.  *See* 29 U.S.C. § 2614(a)(3)(B).  *See also Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005); *Bones v. Honeywell Int'l., Inc.*, 366 F.3d 869, 877 (10th Cir. 2004); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003).  Even if it is ultimately determined that Sarnowski gave legally sufficient notice, he will not prevail on his interference claim if Air Brook can establish that it terminated Sarnowski for a reason unrelated to his intention to exercise his rights under the FMLA.

## B.  New Jersey Law Against Discrimination

In applying the LAD, the New Jersey anti-discrimination law, courts use the same burden-shifting framework that the Supreme Court adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Andersen v. Exxon Co., U.S.A.*, 446 A.2d 486, 490 (N.J. 1982).  To establish a *prima facie* case of discrimination, the plaintiff must demonstrate by a preponderance of the evidence that, *inter alia*, he is a member of a protected class.  *Id.* at 491.  The LAD extends protection against discrimination to an individual who suffers from a disability.  *See* N.J.S.A. 10:5-4.1.  The District Court held that Sarnowski could not demonstrate that he was disabled under the LAD because he did not present expert medical evidence,

11

indicating that a handicap existed. *Sarnowski*, 2005 WL 3479685, at *3.[2]

This holding by the District Court misstates the standard adopted in New Jersey in interpreting the LAD. The District Court relied on *Clowes v. Terminix Int'l, Inc.*, 538 A.2d 794 (N.J. 1988), in requiring expert testimony of a disability. In *Clowes*, however, the New Jersey Supreme Court called for "competent and legal evidence" to support the diagnosis of a disability. *Id.* at 806. In *Clowes*, the court gave expert testimony as an example of such evidence. In subsequent cases, testimony by the plaintiff's own treating physician has been held to satisfy this "competent and legal evidence" requirement. *See Gaul v. AT & T, Inc.*, 955 F.Supp. 346, 349 (D.N.J. 1997) ("*Clowes* simply required that a plaintiff put forth competent medical evidence that he actually suffered from the ailment he claims is his disability.") In *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 308 n.3 (3d Cir. 1999), we have expressed our approval of this reading of *Clowes*.

---

[2]Physical conditions that courts have accepted as meeting the LAD definition of disability include the aftermath of a heart attack, *Panettieri v. C. V. Hill Refrigeration*, 388 A.2d 630, 634 (N.J. Super. Ct. App. Div. 1978); varicose veins, *Nieves v. Individualized Shirts*, 961 F.Supp. 782, 796 (D.N.J. 1999); and obesity which contributed to arthritis, a heart condition, and obstructive lung disease, *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 835-36 (N.J. 2002). Under this standard, Sarnowski's medical problems might well be found to satisfy the statutory definition.

12

Turning to the records that Sarnowski submitted to the District Court, we conclude that there was sufficient information on his medical condition – including records from his treating doctors that catalogued his diagnoses with Coronary Artery Disease and Wolff-Parkinson-White syndrome, his October 2002 bypass surgery, specific findings by his heart surgeons, and the installation of an intracardiac defibrillator in his chest at the end of April 2003 – to create an issue for the jury on Sarnowski's disability under LAD.[3]  The District Court should not have granted summary judgment on this claim.

## C. New Jersey Conscientious Employee Protection Act

The CEPA prohibits a New Jersey employer from taking "retaliatory action" against an employee who objects to "any activity, policy or practice which the employee reasonably believes" is in violation of applicable law.  N.J.S.A. 34:19-3(c)(1).  To prevail on a claim under this provision, a plaintiff must establish that (1) he reasonably believed that his employer's conduct was violating a law or rule or regulation promulgated pursuant to law, (2) he objected to the conduct, (3) an adverse employment action was taken against him, and (4) a causal connection exists between the whistleblowing

---

[3]In determining that Sarnowski has provided sufficient information on his medical condition to escape summary judgment against him on this claim, we are not deciding that he has met the other elements of a LAD claim, in particular the need to demonstrate that he was performing his job at a level that met his employer's legitimate expectations.

13

activity and the adverse employment action.  *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003).

Sarnowski alleges that Air Brook violated five separate federal transportation regulations.  Sarnowski states that, the day before he was terminated, he complained to his supervisor of two of these violations, regarding malfunctioning brake lights and a flat tire.  The incidents he reported involved disagreements about how best to deal with two minor mechanical bus problems.  Sarnowski's complaints regarding Air Brook's other violations occurred long before his date of termination.  When we view these incidents, they are either too minor or too far-removed from the date of termination for there to be, as a matter of law, a causal connection between the "whistleblowing" activity and the termination.  Moreover, we find no pattern of antagonism that might otherwise suggest a connection.  *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).  The District Court did not err in granting summary judgment in favor of Air Brook on this claim.

## IV.  Conclusion

For the foregoing reasons, the judgment of the District Court on the CEPA claim will be affirmed.  The judgments on the FMLA and NJLAD claims will be vacated and the case remanded to the District Court for further proceedings consistent with this opinion.

14